UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BROWN'S CHICKEN & PASTA, INC. ) | | |
| ) | | |
| Debtor. ) | | Case No. 09-49094 |
| ) | | |
| _____) | | |
| ) | | |
| POPGRIP, LLC, ) | | |
| ) | | |
| Plaintiff, ) | | Adv. No. 11-2395 |
| ) | | |
| V. ) | | |
| ) | | |
| BROWN'S CHICKEN & PASTA, INC. and ) | | Hon. Jacqueline P. Cox |
| HOWARD KORENTHAL, not individually ) | | |
| but solely as Liquidating Trustee of Brown's ) | | |
| Chicken &Pasta, Inc., JOLI, INC., LIFE ) | | |
| A.B., LLC., and JUST TONI'S. ) | | |
| ) | | |
| Defendants. ) | | |

## MEMORANDUM OPINION

### I. Jurisdiction and Venue

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(a) which provides that the district courts have original and exclusive jurisdiction of all cases under title 11. 28 U.S.C. § 157(a) allows the district courts to refer title 11 cases to the bankruptcy judges for their districts. The District Court for the Northern District of Illinois has promulgated Internal Operating Procedure 15(a), which refers its bankruptcy cases to this Court.

As allowed by 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter final judgment on core proceedings arising in or under the Bankruptcy Code. "Arising under" jurisdiction covers matters for which a claim is made under a provision of title 11, the U.S. Bankruptcy Code, such as claims for damages for violation of the automatic stay

under 11 U.S.C. § 362(k)(1). "Arising in" jurisdiction covers matters that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy, such as motions to turn over property of the estate, and motions to appoint or elect trustees under 11 U.S.C. § 1104. *See Matter of Wood*, 825 F.2d 90, 96-97 (5th Cir. 1987).

Core proceedings include those concerning plan confirmation, the liquidation of the assets of the estate, and adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(L) and (O). The questions to be determined herein are whether equipment listed in the Debtor's Schedule B was sold to Plaintiff Popgrip, LLC ("Popgrip") and whether Popgrip has assumed certain franchise agreements. Resolution of these issues involves interpretation of this Court's March 15, 2011 order confirming the First Amended Plan of Reorganization and whether Popgrip has complied with the Bankruptcy Code's contract assumption provisions.

Proceedings that do not arise in a bankruptcy case or under title 11 but are otherwise related to a bankruptcy case are noncore proceedings. *Stern v. Marshall*, 131 S.Ct. 2594, 2604-05 (2011).

In *Stern*, the Supreme Court held unconstitutional bankruptcy court jurisdiction over certain counterclaims based on state law. A bankruptcy judge may hear noncore matters, but absent consent of the parties, may only "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

The test for determining whether a civil proceeding is related to a bankruptcy case is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *In re Greektown Holdings, LLC*, 728 F.3d 567, 577 (6th Cir. 2013). In *In re Xonics*, 813 F.2d 127, 130 (7th Cir. 1987), the Seventh Circuit held that

"[a] non-core proceeding is related to a bankruptcy case only when it affects the amount of property available for distribution or the allocation of property among creditors."

Further complicating this matter is that the adversary proceeding herein was initiated post-confirmation. In *Greektown*, the Sixth Circuit explained that a bankruptcy court's "related to" jurisdiction could be diminished post-confirmation and required that jurisdiction inquiries turn on whether the outcome of the claims would affect the bankruptcy estate. Noncore "related to" jurisdiction could be invoked herein as this Court is called on to rule on what was property of the bankruptcy estate under 11 U.S.C. § 541(a): was the equipment listed on Schedule B property of the estate? This issue affects the fundamental issue of what was available for distribution and sale. Count II's request for injunctive relief regarding which contract was assumed and/or assigned also rests on what was property of the bankruptcy estate. The issue is the effect of disclosure of a post-sale franchise agreement via an amended Schedule G.

A similar situation was addressed by the Third Circuit in *In re Lazy Days' RV Center, Inc.*, 724 F.3d 418 (3d Cir. 2013). An order was entered in the *Lazy Days'* case by a bankruptcy judge reopening a confirmed chapter 11 case and declaring that an anti-assignment clause included in the debtor's lease was unenforceable. A district court reversed the bankruptcy court, finding that the bankruptcy judge lacked jurisdiction and that it's order was advisory. *See In re Lazy Days' RV Center, Inc.*, 2012 WL 4364257, at *2 (D.Del. 2012). The Third Circuit reversed the district court's order. The debtor Lazy Days' and its lessor agreed pre-petition that in the debtor's expected chapter 11 case that their lease would be assumed and assigned to the LDRV entity. The bankruptcy court confirmed a plan that incorporated the agreement and closed the case. The lease was assigned to LDRV. However, when LDRV attempted to exercise the lease's purchase option the lessor refused to honor it. Lawsuits were filed by each party in state court in Florida. Debtor Lazy Days' filed an emergency motion to reopen the bankruptcy case seeking a ruling that the lease's anti-assignment provision was unenforceable pursuant to 11 U.S.C. § 365(f)(3), which renders unenforceable any provision in an unexpired lease of a debtor that terminates or modifies a right to assign the lease.

In addition to the district court's holding, the lessor asserted an alternative ground for affirmance: that the bankruptcy court unconstitutionally asserted subject matter jurisdiction over a private rights dispute.

The court discussed the principle that federal courts have no authority to render advisory opinions opining on "what the law would be upon a hypothetical state of facts." 724 F.3d at 421. The court ruled that because the bankruptcy judge issued a decree that invalidated the lease's anti-assignment clause and ordered the parties to do something, it "affected the rights of litigants, and was not an advisory opinion." *Id.* (*citing In re McDonald,* 205 F.3d 606, 609 (3d Cir. 2000)) (bankruptcy court opinion not advisory when it "resolved the litigation). *See also Matter of Shondel,* 950 F.2d 1301, 1309 (7th Cir. 1991) (bankruptcy court opinion modifying its previous injunction to allow a wrongful death claimant to proceed in state court against a bankruptcy estate affected the legal rights of the parties and was a "case" within the meaning of Article III and was therefore not an advisory opinion). The Third Circuit rejected the lessor's reliance on *Stern v. Marshall* for its assertion that the bankruptcy court lacked subject matter jurisdiction; it held that the bankruptcy court did not decide a question of state common law, but determined whether, in light of 11 U.S.C. § 365(f)(3), an anti-assignment clause survived the settlement agreement it had confirmed as part of a chapter 11 bankruptcy. The matters at issue in this proceeding are strikingly similar to those the bankruptcy judge in Lazy Days' resolved: the scope and effect of its prior confirmation order. This Court has authority to enter a final order herein.

Venue is proper pursuant to 28 U.S.C. § 1409(a), which provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."

## II. Facts and Background

The Debtor was the franchisor of Brown's Chicken restaurants in the Chicago area. The Debtor also ran one company-owned restaurant. From 2007 to 2009 the Debtor's shareholders disputed the business' operations and the disposition of receivables owed by franchisees and shareholders. The protagonists were the Portillos and the Kenneficks, all of whom were the Debtor's former principals. The issues were litigated in a suit initiated by Thomas Kennefick; a judgment was entered against the Debtor on October 28, 2009 in the amount of $882,000 in the Circuit Court of DuPage County, Illinois. *See* Disclosure Statement, dkt. no. 190, p. 10 in Bankruptcy Case 09-49094 and Amended Schedule F of Creditors Holding Unsecured Nonpriority Claims, dkt. no. 5, p. 14 in Bankruptcy Case 09-49094.

On December 29, 2009, Brown's Chicken & Pasta, Inc. filed for relief under Chapter 11 of the Bankruptcy Code. On March 15, 2011 Debtor's First Amended Chapter 11 Plan was confirmed. Howard Korenthal was appointed Liquidating Trustee of the bankruptcy estate. He took possession of the Debtor's assets and was authorized to act in its stead post-confirmation.

On December 17, 2009, (twelve days before bankruptcy relief was sought) the Debtor, through its President, Toni Portillo, claims to have sold the Debtor's company-owned stores to two entities owned by her mother, Joan Portillo. Those entities are Joli, Inc. and Forty- One, Inc. Toni Portillo alleges that a franchise agreement was entered into therein between the Debtor and Joli, Inc.

On October 18, 2010 the Debtor conducted an auction to sell substantially all of its assets. Popgrip was the successful bidder. Popgrip is owned by members of the Kennefick family. An order was entered on October 20, 2010 approving the sale. This adversary proceeding concerns exactly what was sold and whether a certain franchise agreement was assumed by Popgrip.

In Count I of the First Amended Adversary Complaint ("Complaint"), filed herein on

October 28, 2012, Popgrip accuses the Defendants of conversion of assets sold to it at a bankruptcy sale. The legal theory is that the Debtor's Schedule B is a detailed inventory list of the Debtor's equipment located at the Joliet store, worth $25,582.25. The Plaintiff also asserts that the "Book Asset Detail" included in the Offering Memorandum for the sale, lists the same equipment as belonging to the Debtor.

The Debtor did not reveal the December 17, 2009 transfers in its Statement of Financial Affairs, at Question 10, that the Debtor's President Toni Portillo testified about at trial.

Popgrip's representative visited the Joliet store where he observed the equipment.

According to Popgrip, the Bill of Sale dated October 22, 2010 transferred to Popgrip all right, title and interest in all of the fixed assets. *See* Bill of Sale, Defendant's Exhibit 23, paragraph 2.

In January of 2011, Defendant Life A.B., LLC opened a fast food restaurant at 2301 W. Jefferson Ave., Joliet, Illinois, the location of the former company owned Brown's Chicken & Pasta store, renaming it Just Toni's. Life A.B., LLC's sole member is Joan Portillo. Popgrip argues that Just Toni's is using the equipment it purchased at the sale without Popgrip's consent and without compensation to Popgrip. The Defendants have refused to transfer the equipment to Popgrip.

The Defendants counter that the equipment was sold to an entity owned by Toni Portillo's mother pre-petition and that inclusion of the equipment in Schedule B was a mistake. *See* dkt. no. 153, Trial Tr. vol. I, 58-59, 69, 71, 76, 83, 132, October 24, 2013 ("Tr."). Toni Portillo's testimony that a mistake was made in not including the equipment on Schedule B is not believable. The animosity over the civil suit in which Thomas Kennefick was the plaintiff that resulted in a judgment for $882,000 against the Debtor undoubtedly motivated the effort to now deprive Popgrip and its owners, the Kenneficks, of the benefit of their bargain.

The Defendants allege that Popgrip did not do due diligence when its representative inspected the Joliet location. The Court disagrees. Popgrip justifiably relied on the representation in Schedule B that the equipment listed therein belonged to the Debtor. *See* Schedule B which includes Exhibit A - Machinery & Equipment, pp. 7-8, filed on January 12, 2010, dkt. no. 36. Schedule B was not amended to indicate that the equipment was not the Debtor's property. The Court enters judgment for turnover on Count I herein in favor of the Plaintiff, Popgrip, LLC and against Defendants Joli, Inc., Life A.B., LLC and Just Toni's. The Defendants are each jointly ordered to turn over to Plaintiff Popgrip, LLC all of the equipment listed in Schedule B as being located at the Joliet store on December 29, 2009. In the alternative, judgment is entered herein in the amount of $25,582.25 in favor of Plaintiff Popgrip, LLC and jointly against Defendants Joli, Inc., Life A.B., Inc and Just Toni's.

## COUNT II

Count II of the First Amended Complaint seeks declaratory relief as to the franchise agreement between the Debtor and Joli, Inc.

There exists two franchise agreement between the Debtor, Brown's Chicken & Pasta, Inc. and franchisee Joli, Inc. There is the initial fifteen-year franchise agreement between the Debtor and Joli, Inc. There is also a fifteen-month franchise agreement between the Debtor and Joli, Inc. The Plaintiff argues that the longer agreement is in effect. The Defendants argue that the shorter agreement was in effect and has been terminated in accordance with its terms.

The Joli, Inc. and Forty-One, Inc. franchise agreements were not listed in the Schedule G of Executory Contracts and Unexpired Leases filed herein when the Debtor sought bankruptcy relief on December 29, 2009. On July 25, 2011, the Plaintiff filed a Motion to Amend Schedule G of the Voluntary Petition and for an Order Including the Franchise Agreements Between Debtor and Joli, Inc and Forty-One, Inc. in the § 363 Sale Order ("Motion to Amend Schedule G"). *See* dkt. no. 343 in Bankruptcy Case No. 09-49094. On September 13, 2011, an Amended Schedule G was filed; the disputed franchise agreements were included therein. *See* dkt. no. 411,

Bankruptcy Case No. 09-49094. On September 15, 2011, an order was entered indicating that the Motion to Amend Schedule G was concluded with the amendment to Schedule G. *See* dkt. no. 419 in Bankruptcy Case No. 09-49094. That order did not include the franchise agreements in the Section 363.

The Amended Schedule G included the franchise agreement for Joli, Inc. dated December 17, 2009 and the franchise agreement for Forty-One, Inc., also dated December 17, 2009. The entries for those agreements state that the agreements were entered into in exchange for $25,000 forgiveness by the landlord of a lease arrearage, a real estate tax arrearage and that the agreements expired on March 30, 2011 pursuant to a six-month notice of non-renewal. The entries also state that the agreements were rejected pursuant to the Confirmed Plan. *See* Dkt. No. 411.

In July of 2012 the Liquidating Trustee discovered fully executed previously undisclosed fifteen-year franchise agreements between the Debtor and Joli, Inc. and Forty-One, Inc. dated December 17, 2009.

The Court is presented with the following questions: Did the fifteen-month Joli, Inc. franchise agreement replace the initial fifteen-year agreement? Which, if any, franchise agreement was transferred via the Sale? What was transferred via Trustee Korenthal's settlement?

When asked about the missing franchise agreements, Toni Portillo claimed that they were omitted from Schedule G in error. Tr. at 32. She also testified that there are varying franchise agreements because after Joan Portillo consulted with her attorney, she decided to shorten the terms from fifteen years to fifteen months. Tr. at 58-59. Toni Portillo also testified that the fifteen-month franchise agreement was executed on December 24, 2009, five days before Debtor filed for bankruptcy.[1] Tr. at 59. Despite this testimony, the Court notes that the shorter franchise

---

[1] Defendants' counsel acknowledged at trial that the second franchise agreement did not contain language explicitly revoking the initial franchise agreement. Tr. at 115.

-8-

agreement is also dated December 17, 2009. The Court also notes the fifteen-month agreement, which Defendants claim replaced the initial agreement, is missing certain guarantee pages that were attached to the first franchise agreement. Toni Portillo was unable to explain why those guaranties were not included in the subsequent agreement. Tr. at 57-58. Toni Portillo also testified that although the subsequent agreement was for a considerably shorter period of time, the $25,0000 purchase price was not reduced. Tr. at 60-61.

On August 9, 2012, pursuant to an agreed order the Liquidating Trustee transferred to Popgrip the Trustee's right or the estate's right, title and interest to the franchise agreements, equipment or receivables related to Forty-One, Inc., Joli, Inc. and Highland Fling, Inc. Paragraph 3 of that order states that "[t]o the extent that the franchise agreements, equipment or receivables related to the franchises of Forty-One, Inc., Joli, Inc., or the The Highland Fling, Inc. were not previously sold to Popgrip during the bankruptcy case, the Trustee hereby transfers the Trust's right, title or interest, if any, in those assets to Popgrip." Trustee Korenthal was then dismissed as a defendant in this adversary proceeding. *See* Agreed Order Dismissing Complaint Against Trustee, dkt. no. 88 in Adversary Proceeding No. 11-2395.

Popgrip claims, based on rights it acquired from the Liquidating Trustee, that it can assume or reject any executory contract not included in the Schedules without court approval. Popgrip claims that on August 10, 2012 it sent notice to the Defendants assuming and accepting the fifteen-year Joli, Inc. franchise agreement pursuant to the requirements of the Confirmed First Amended Plan of Reorganization. The Court agrees.

The Confirmed First Amended Plan at Article VIII provides that

> [i]f the Liquidating Trustee becomes aware of any Executory
> Contracts or Unexpired Leases that was not included in the
> Schedules, the right of the Liquidating Trustee to assume or reject
> such contract or lease shall be extended until the date that is thirty

(30) days after the date on which the Liquidating Trustee becomes aware of the existence of such contract or lease and such assumption or rejection shall not require Court approval.

See First Amended Plan of Reorganization, dkt. no. 189, p. 18, Bankruptcy Case 09-49094.

### A. Popgrip's Compliance with Requirement of Court Order to Assume, Reject or Assign an Executory Contract

The Defendants argue that because Popgrip has not obtained a court order allowing assumption of either of the Joli, Inc. franchise agreements, it can not prevail on Count II. The Defendants are wrong.

Federal Rule of Bankruptcy Procedure 6006 provides: "A proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014." Rule 6006 allows assumption of executory agreements through a plan. Bankruptcy Code Section 1123(b)(2) provides that "a plan may, subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section . . . ." 11 U.S.C. § 365(b)(2). A court order need not be obtained if a plan provides for the assumption, rejection or assignment of an executory contract. *In re Golden Triangle Film Labs, Inc.*, 176 B.R. 608, 609 (Bankr. M.D. Fla. 1994). As noted above, the Confirmed First Amended Plan allows the Trustee, and his successor Popgrip, to assume franchise agreements not previously disclosed without court approval. As the Defendants note in Defense Exhibit 28 at paragraphs 53 and 54, on August 10, 2012 Popgrip sent the Defendants a notice assuming and accepting the initial Joli, Inc. franchise agreement pursuant to the requirements of the confirmed plan. Popgrip alleges that this notice was timely because the fifteen-year initial franchise agreement was "recently discovered" in July, 2012 by the Liquidating Trustee and Popgrip had 30 days to assume it. The Court agrees with Popgrip. The plan provided that later-discovered franchise agreements could be assumed without court

approval. The Court notes that there are no due process concerns as the other party to the later-discovered franchise agreement was Joan Portillo, whose daughter should have disclosed that franchise agreement when the Debtor sought bankruptcy relief in 2009.

### B. Popgrip's Compliance with Bid Procedures Order

In their Trial brief the Defendants argue that Popgrip has not complied with the terms of the Bid Procedures Order entered on September 2, 2010. *See* dkt. no. 139, Bankruptcy Case 09-49094. Paragraph 2 of the Sale and Bidding Procedures Document deals with the assumption and assignment of executory contracts. It states that the Debtor may seek authority to assume and assign contracts/leases at the request of the purchaser and that the purchaser will have 60 days following the closing on the sale of the assets to select those contracts/leases it desires to assume and assign. Thereafter the Debtor was to file a motion seeking assumption and assignment of the contracts or leases selected by the purchaser. Popgrip could not make a selection as to the initial Joli, Inc. franchise agreement within 60 days after the closing of the sale of the assets because that franchise agreement had not yet been disclosed. As noted above, the initial Joli, Inc. franchise agreement was disclosed long after the October 18, 2010 sale when the September 13, 2011 Amended Schedule G of Executory Contracts and Unexpired Leases was filed. This argument fails.

### C. Popgrip's Compliance with the Asset Sale Agreement

The Defendants argue that Popgrip has not complied with the terms of the Asset Purchase Agreement ("APA") entered between the Debtor and Popgrip which requires the Debtor to obtain court approval to assume and assign executory contracts. *See* Asset Purchase Agreement, Defense Exhibit 19. At page 3 it states:

> [i]f the purchaser is the successful bidder, Seller will use its best efforts to obtain Bankruptcy Court approval of an order approving the transactions contemplated by this Agreement ("the Sale Order"), providing for, among other things, . . .

> (f) that the Seller shall conditionally assume all Executory Contracts, and assign them to the purchaser subject to: (i) the Seller providing the parties to the Executory Contracts with a notice setting a bar date (the "Bar Date") for any claims of damages or setoff attributable to the Executory Contracts ("Cure claims"), (ii) assignment, transfer and conveyance of the Executory Contracts free and clear of any Cure claims not approved [*sic*] the Bankruptcy Court, and (iii) the Purchaser's option to accept or reject any Executory Contract within thirty (30) days after the Bar Date. Purchaser shall be responsible for any approved cure costs related to accepted executory contracts required by purchaser. (This last sentence was handwritten; the balance of the document is typed).

At page 6 it states:

> Purchaser acknowledges receipt of the sellers correspondence of September 29, 2010 and the representations contained therein. (This sentence was handwritten). Except for Executory Contracts that have been rejected in the course of the Bankruptcy Case, all Executory Contracts are valid and binding obligations of the parties thereto that may be assumed by the Purchaser.

The APA does contemplate that the Debtor, as the seller, will seek court approval of the assumption and assignment of executory contracts and give notice to parties to the executory contracts of such efforts. However, Popgrip, as Purchaser, could not elect to assume and assign the Joli, Inc. franchise agreement before it was disclosed long after the sale.

The Defendants also argue that information in a September 29, 2010 letter and in the Debtor's Monthly Operating Reports put Popgrip on notice of the existence of the Joli, Inc. franchise agreement. The Court disagrees. That letter mentions that Joli, Inc. had submitted a nonrenewal form. That is not sufficient to put Popgrip on notice of the existence of *both* the fifteen-month franchise agreement and the initial fifteen-year Joli, Inc. franchise agreement.

Parties who purchase assets from bankruptcy estates should be able to rely on debtors' Schedules and Statements of Financial Affairs. Otherwise, competent, financially able purchasers will shun a bankruptcy process that requires them to guess about what they are asked to purchase. It light of the foregoing, the Court enters judgment in favor of Popgrip, LLC as to Count II of the Complaint.

### III. Conclusion

In sum, the Court enters judgment in favor of Plaintiff, Popgrip LLC and against Defendants Joli, Inc., Life A.B., LLC and Just Toni's as to Count I the First Amended Complaint. Defendants Joli, Inc., Life A.B., LLC and Just Toni's are each jointly ordered to turn over to Plaintiff Popgrip, LLC all of the equipment listed in Schedule B as being located at the Joliet store on December 29, 2009. In the alternative, judgment is entered herein in the amount of $25,582.25 in favor of Plaintiff Popgrip, LLC and against Defendants Joli, Inc., Life A.B., Inc. and Just Toni's.

The Court also enters judgment in favor of Plaintiff, Popgrip LLC and against Defendants Joli, Inc., Life A.B., LLC and Just Toni's as to Count II of the First Amended Complaint. Popgrip properly assumed and accepted the fifteen-year Joli, Inc. franchise agreement pursuant to the requirements of the Confirmed First Amended Plan of Reorganization. Each franchise agreement was sold to Popgrip. Both franchise agreements were executed by the Debtor and Joli, Inc. Popgrip has assumed only one of them.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate judgment order will be entered.

DATED:    December 6, 2013          ENTER:    *Jacqueline P. Cox*

J. P. Cox
_____
Jacqueline P. Cox

U.S. Bankruptcy Judge

*Jacqueline P. Cox*